# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

**VIRGINIA GAYLE NORRIS**  CASE NO. 6:18-CV-01413

**VERSUS**  JUDGE SUMMERHAYS

**ACADIANA CONCERN FOR AIDS RELIEF**  MAGISTRATE JUDGE HANNA
**EDUCATION AND SUPPORT**

## MEMORANDUM RULING

Presently before the court is the Rule 12(b)(6) Motion to Dismiss [doc. 12] filed by defendant, Acadiana Concern for Aids Relief Education and Support ("Defendant"). In the Motion, Defendant argues that the Plaintiff's Complaint fails to state a claim upon which relief can be granted, on three bases, namely: (1) the Louisiana whistleblower statute does not apply to non-profit organization; (2) the Louisiana whistleblower statute only applies with regard to violations of Louisiana statutory law; and (3) Plaintiff fails to state a claim under the ADEA because her claims are merely thread-bare recitals of the elements of an ADEA claim. Plaintiff has filed an objection to the Motion.

## I.

## BACKGROUND

Plaintiff was employed by Defendant as a field surveillance epidemiologist in the HIV/AIDS program administered by the State of Louisiana. Plaintiff's job entailed obtaining information regarding individuals who tested positive for HIV.[1] Plaintiff was employed by

---

[1] Supplemental, Amending, and Restated Complaint [doc. 11] at ¶ 3.

Defendant from 2001 until she was terminated in August of 2018.[2] Plaintiff claims that she was subjected to harassment based upon her age and that Defendant attempted to force her to obtain and report information which she believed was in violation of various federal and state laws. A part of Plaintiff's job responsibility was to obtain and report personally identifiable health information for individuals who tested positive for the HIV virus.[3] Plaintiff indicates that when a new supervisor was hired, that supervisor began requesting that Plaintiff obtain protected health information for individuals who had been tested for HIV but who tested negative.[4] Plaintiff consistently refused to obtain and report this information as she believed it was a violation of HIPAA and Louisiana law, specifically, LAC, II, Title 51 of the Sanitary Code.[5] Plaintiff reported these violations to various state officials.[6] Plaintiff alleges that Defendant continued to order her to provide the HIV test result information and that Plaintiff continued to refuse. Defendant then placed Plaintiff on a supervisory plan and ultimately terminated her employment. Plaintiff further alleges that, while employed by Defendant, she was subjected to a pattern of age-based comments and conduct.[7] Plaintiff alleges that she was terminated based upon her age and her reporting unlawful actions to her employer and to the state officials. Plaintiff has alleged violations of La. R.S. 23:967 (the "Louisiana Whistleblower Statute") as well as 29 U.S.C. §623, also known as the Age Discrimination in Employment Act ("ADEA").

---

[2] *Id.*
[3] *Id.* at ¶ 4.
[4] *Id.* at ¶ 8
[5] *Id.* at ¶ 13.
[6] *Id.* at ¶ 15.
[7] *Id.* at ¶ 6a.

## II.

## ANALYSIS

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted."[8] Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."[9] To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."[10] A claim satisfies the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*'s plausibility standard is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[11] While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[12] The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[13] In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as

---

[8] Fed. R. Civ. P. 12(b) (6).
[9] Fed. R. Civ. P. 8(a)(2). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).
[10] *Twombly*, 550 U.S. at 570; see also *Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. 544, 127 S.Ct. at 1974, 167 L.Ed.2d 929).
[11] *Iqbal*, 129 S. Ct. at 1949(internal citations omitted).
[12] *Twombly*, 550 U.S. at 555 (citation omitted).
[13] *Id.* (quotation marks, citations, and footnote omitted).

true and view them in the light most favorable to the plaintiff.[14] In ruling on such a motion, the court cannot look beyond the pleadings.[15]

### A. Claim Under the Louisiana Whistleblower Statute

Defendant challenges Plaintiff's claim under the Louisiana Whistleblower Statute. Plaintiff's claim is based on her resistance to, and attempts to report, Defendant's conduct with respect to HIV test results. Defendant argues that the Whistleblower Statute does not apply to non-profit organizations, such as Defendant. Defendant also contends that Plaintiff has not alleged a violation of a state statute.

    1. <u>Does the Statute Apply to Non-Profit Organizations?</u>

The Louisiana Whistleblower Statute provides:

An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:

> (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
>
> (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
>
> (3) Objects to or refuses to participate in an employment act or practice that is in violation of law.[16]

The statute does not define the term "employer." As a result, courts have frequently borrowed the definition of "employer" from Louisiana's Employment Discrimination Law ("LEDL"), La. R.S. 23:302(2).[17] This statute provides that:

---

[14] *Sonnier v. State Farm Mutual Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).
[15] *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), cert. denied, 530 U.S. 1229, 120 S.Ct. 2659, 147 L.Ed.2d 274 (2000).
[16] LSA-R.S. 23:967(A)
[17] *See Dronet v. Lafarge Corp.*, 2000 WL 1720547 (E.D. La. 2000); *Jones v. JCC Holding Co.*, 2001 WL 537001, *3 (E.D. La May 21, 2001); *Jackson v. Xavier Univ. of Louisiana*, 2002 WL 1482756, at *6 (E.D. La. July 8, 2002)(citing

4

> "Employer" means a person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state receiving services from an employee and, in return, giving compensation of any kind to an employee. *The provisions of this Chapter* shall apply only to an employer who employs twenty or more employees within this state for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. "Employer" shall also include an insurer, as defined in R.S. 22:46, with respect to appointment of agents, regardless of the character of the agent's employment. *This Chapter* shall not apply to the following:
>
> . . .
>
> (b) Employment of an individual by a private educational or religious institution or any nonprofit corporation ….

La. R.S. 23:302(2) (emphasis added). This provision of the LEDL contains a broad definitional clause for "employer" followed by specific carve-outs applicable to that chapter – i.e. Chapter 3-A. Defendant contends that the carve-out for non-profits applies to the definition of "employer" for purposes of the Louisiana Whistleblower Statute, which is located in Chapter 9, and therefore bars claims under the Act against non-profits like Acadiana Concern for AIDS Relief Education and Support. The Court disagrees.

First, Defendants' argument is inconsistent with the text of the Whistleblower Statute and the LEDL. In construing a statute, the "plain meaning" of the words of a statute should be conclusive. *See United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242 (1989). Here, the carve-out for non-profit organizations in the LEDL is expressly limited to "this Chapter," meaning Chapter 3-A, not Chapter 9 containing the Whistleblower Statute. The Whistleblower Statute does

---

*Jones*); *Myers v. BP America, Inc.*, 2010 WL 3878920, at *2-3 (W.D. La. 2010)(citing *Langley, Jackson,* and *Jones*); *Wilson-Robinson v. Our Lady of the Lake Reg'l Med. Ctr., Inc.*, 2011 WL 6046984, at *2 (M.D. La. Dec. 6, 2011)(citing *Jackson, Jones,* and *Langley*); *English v. Wood Group PSN, Inc.*, 2015 WL 5061164, at *10-11 (E.D. La. 2015)(citing *Dronet*); *Sebble v. NAMI New Orleans, Inc.*, 2018 WL 929604, at *2 (E.D. La. 2018)(citing *Jackson, Jones, Meyers, Langley* and *Wilson-Robinson*); *Heintz v. Lawson*, 2019 WL 127057, at * 10 (E.D. La. 2019); *Williams v. Franciscan Missionaries of Our Lady Health System, Inc.*, 2019 WL 1370871, at *3 (M.D. La. 2019)(citing *Wilson-Robinson*).

not expressly incorporate the definitions in the LEDL or its carve-outs. Nor is there statutory language in the Whistleblower Statute supporting a legislative intent to remove non-profit organizations from the scope of its protections. Similarly, the LEDL contains no express language indicating that its carve-out for non-profit organizations applies to other chapters. Accordingly, since the Whistleblower Statute does not define the term "employer," the Court will apply the ordinary meaning of that term: "A person who controls and directs a worker under an express or implied contract of hire and who pays the worker's salary or wages".[18] This definition is consistent with the broad definitional clause of the LEDL absent the specific carve-outs applicable solely to that chapter.

While there are no decisions from the Louisiana Supreme Court or the Fifth Circuit addressing this construction of the Whistleblower Statute, two recent federal district court decisions and a decision from Louisiana's Third Court of Appeals adopt this reading of the Whistleblower Statute and hold that the statute applies to non-profit organizations. *See Knighten v. State Fair of Louisiana, et al.,* No. 03-CV-1930, 2006 WL 725678 (W.D. La. March 21, 2006); *Terry v. Acadiana Concern for AIDS Relief Educ. And Support Inc. dba Acadiana CARES,* No. 18-CV-01508, 2019 WL 2353226 (W.D. La. April 26, 2019); *Hunter v. Rapides Parish Coliseum Auth.,* 158 So.3d 173, 178 (La. App. 3 Cir. 2015). In *Knighten*, the district court addressed the same question of whether the definition of employer from the LEDL applies in full to the Whistleblower Statute and thus precludes a whistleblower claim against non-profit organizations. The court rejected this reading of the Whistleblower Statute on the same grounds: the carve-outs

---

[18] *Blacks Law Dictionary* 604 (9th Ed. 2009).

in the LEDL apply to that chapter only, and not to the Whistleblower Statute. The court therefore applied the ordinary meaning of the term "employer":

> Section 302 is included in Chapter 3-A-Prohibited Discrimination in Employment. Section 967 is included in Chapter 9-Miscellaneous Provisions, Part III, Employee Protection from Reprisal; Prohibited Practices; Remedies. There is simply no linking language between the two sections; in fact, the language in section 302 evinces that its provisions apply to "this chapter" only. If the Louisiana Legislature wished to carve out a nonprofit corporation exception for section 967, it could have easily done so with precise, narrowing language. Moreover, if the Louisiana Legislature intended for section 302's definition of an employer to be an overriding definition applicable to all statutes contained in Title 23, it could have easily eliminated the "this chapter" language in section 302. Rather than clear guidance from the Louisiana Legislature or binding precedent from the United States Court of Appeals, Fifth Circuit or the Louisiana Supreme Court, this Court is left with section 967's reference to "employer," a broad term with no hint of any exception. Thus, this Court declines to extend La. R.S. 23:302's definition of "employer" to the Louisiana Whistleblower Statute, La. R.S. 23:967.[19]

2006 WL 725678 at *1. *See also Terry*, 2019 WL 2353226 (declining to apply the definition of "employer" from the LEDL and holding that non-profit organizations are subject to the Whistleblower Statute); *Hunter*, 158 So.3d at 178 (declining to apply the definition in the LEDL to a Whistleblower Claim against a parish coliseum authority that employed fewer than 20 employees). The Court agrees with reasoning of these cases that the scope of the Whistleblower Statute is not limited by the carve-outs in the LEDL.

The cases cited by Defendant do not change this result. While Defendant is correct that several courts have applied the definition of "employer" in the LEDL to the Whistleblower Statute, most merely applied the broad definitional clause in La. R.S. 23:302(2) without addressing the carve-outs or whether the Whistleblower Statute applies to non-profit organizations. For example, in *Johnson v. Hospital Corp. of America, et al*,[20] the court was addressing the issue of whether a

---

[19] *Knighten v. State Fair of La., et al*, 2006 WL 725678 (W.D. La. 2006).
[20] 767 F.Supp. 2d 678 (W.D. La. 2018).

parent corporation was considered as an "employer." In *Ray v. City of Bossier*, the court was faced with the issue of whether supervisors were "employers."[21] The cases that have incorporated the LEDL's carve-out for non-profit organizations into the Whistleblower Statute do not consider the statutory text of either act and the context of the carve-outs but instead merely relied on *Johnson*, *Dronet*, and other cases that looked solely to the definitional clause in La. R.S. 23:302(2). *See, e.g., Sebble v. NAMI New Orleans*, 2018 WL 929604 (E.D. La. 2018); *Jackson v. Xavier University of Louisiana*, 2002 WL 1482756 (E.D. La. 2002). These decisions do not include an independent textual analysis of the LEDL's carve-out provisions. Accordingly, these cases are not persuasive on the question of whether the Whistleblower Statute applies to non-profit organizations.

Turning to Plaintiffs' allegations and the ordinary meaning of "employer," the Court concludes that Plaintiff has adequately pled that Defendant was her employer.

2. <u>Does the Whistleblower Statute Apply to Laws Other than State Statutes?</u>

Defendant next argues that Plaintiff fails to state a claim under the Louisiana Whistleblower Statute because she alleges that Defendant violated federal statutes and state *regulations*, not state statutes. The Whistleblower Statute refers to retaliatory actions taken after an employee reports "violations of law." The Fifth Circuit has held that this provision does not apply to violations of *federal* law.[22] Plaintiff, however, argues that she has asserted violations of *state* law, which would trigger application of the statute. Specifically, Plaintiff points to allegations that Defendant violated the Louisiana Constitution, the Louisiana Sanitary Code, and the invasion of privacy provisions of the Louisiana Civil Code. (Plaintiff's Amended Complaint at ¶11 [Doc.

---

[21] *Ray v. City of Bossier*, 859 So.2d 264 (La.App. 2 Cir. 10/24/03).
[22] *Wilson v. Tregre*, 787 F.3d 322 (5th Cir. 2015).

11]).[23] Citing *Edmonds v. Smith*,[24] Defendant argues that the reference to violations of law in the Whistleblower Statute excludes violations of state regulations. In *Edmonds*, the plaintiff complained of "violations of city policy, possible ethics violations, and the blatant disregard of Executive Order MJL 10-05: Professional Services Contract Reforming."[25] *Edmonds* does not support Defendants' argument with respect to the Sanitation Code provisions cited by Plaintiff. Unlike the city policy and ethics violations at issue in *Edmonds*, rules and regulations promulgated by Louisiana state administrative agencies and agency interpretations of those rules and regulations have "the force of law." *Gainer v. Dept. of Health and Hospitals*, 610 So. 2d 936, 938 (La. App. 1st Cir. 11/20/92) (State agencies "can interpret their own rules and their rules have the effect of law"). *Edmonds*, therefore, is distinguishable from the present case. The other cases cited by Defendants use the terms "statute" and "laws" interchangeably but do not hold that the Whistleblower Statute is limited to statutes or that it otherwise excludes state rules and regulations promulgated by state agencies pursuant to statutory authority.[26] Defendant also does not address Plaintiff's allegations under the privacy provisions of Louisiana Constitution and the Louisiana Civil Code, which Plaintiff asserts similarly have the force of law. The Court therefore DENIES Defendant's Motion to Dismiss with respect to Plaintiff's Louisiana Whistleblower Act claims.

---

[23] Specifically, Plaintiff alleges:
>Petitioner told Brodie that she could not obtain or provide that information because it violated HIPAA *and Louisiana law*, specifically, LAC, II, Title 51 of the Sanitary Code, including La. Const. Article 1, § 5, "Right to Privacy", La. Civ.C. Article 2315, invasion of privacy, La. R.S. 40:4 et seq., Sanitary Code, La. R.S. 40:1165.1, "Health Care Information; Records", and La. R.S. 40:1171.1 et seq., "Confidentiality of HIV Test Results.

*Id.* (emphasis added).
[24] 2016 WL 4010979 (E.D. La. 2016).
[25] *Id.* at *4.
[26] *See, e.g.*, *Edmonds*, 2016 WL 4010979 at *4 (while stating that the statute applies only to a violation of a state statute, also refers to whether the plaintiff had shown a violation of "state law"); *Hale v. Touro Infirmary*, 886 So. 2d 1210, 1216 (La. App. 4Cir. 11/3/04) (stating that Whistleblower Statute applies to a violation of state statute, but then concluding that the construction of the statute that "fits best into the frame work of the statute is one that holds the statute to its most specific terms, i.e., violations of state *law* only.") (emphasis added).

### B. Plaintiff's Claim Under the ADEA.

Finally, Defendant argues that Plaintiff fails to state a claim under the ADEA because her claims are merely thread-bare recitals of the elements of an ADEA claim and are based on conclusory factual allegations. Plaintiff alleges claims for age-based harassment as well as age-based disparate treatment and retaliation.

1. <u>Disparate Treatment Claim</u>.

Plaintiff does not have to plead a prima facie case to state a plausible claim of age discrimination. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002). The requirements for a prima facie case, however, provide useful guideposts for determining whether Plaintiff has pled a plausible claim. The prima facie requirements for a disparate treatment claim are: (1) the plaintiff was subjected to adverse action; (2) the plaintiff was qualified for the position; (3) the plaintiff was within the protected class at the time; and (4) the plaintiff was terminated because of her age.[27] To establish an ADEA claim, "a plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir.2010) (quotation marks and citation omitted).

The sum of Plaintiff's factual allegations states a plausible claim for age discrimination. Specifically:

- Plaintiff alleges that she was "subjected to repeated and continuous age-based discriminatory/harassing comments" by her supervisor;[28]

- Plaintiff alleges that her supervisors indicated that Defendant wanted her to retire;[29]

---

[27] *Goudeau v. National Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 7/16/15)
[28] Amended Complaint at ¶ 6(a).
[29] *Id.*

10

- Plaintiff alleges that "numerous times," Defendant inquired about Plaintiff's "retirement status in an effort to force her to do so;"[30]

- Plaintiff alleges that on one occasion her supervisor, Elizabeth Shepard, "communicated to petitioner and another co-worker, similar in age as she, that defendant needed to know if they planned to retire;"[31]

- Plaintiff alleges that another supervisor, Susan Brodie, asked her about her age and asked her "how much longer are you planning on working;"[32]

- Plaintiff alleges that Brodie reacted unfavorably to Plaintiff's response that she intended to work "until I am carried out feet first or I can longer find my way to the office;"[33]

- Plaintiff alleges that Brodie "made repeated inquiries of [Plaintiff's] co-workers regarding [Plaintiff's] age, whether or not they believed [Plaintiff] should retire, and when was [Plaintiff] going to retire;[34]

- Plaintiff alleges that Brodie made similar age-based comments to two of Plaintiff's other co-workers;[35]

- Plaintiff alleges that these age-based comments "were frequent and occurred at least by-weekly throughout this period of time;"[36]

- Plaintiff alleges that younger co-workers did not receive the same comments or inquiries into age or "retirement plans;"[37] and

- Plaintiff alleges that two out of three of her co-workers, including Plaintiff, who were over 65 years of age "were improperly placed on a supervisory plan/probation" because of their age.[38]

The court notes that Plaintiff has alleged other grounds for the adverse employment actions taken against her, specifically her efforts to report what she contends were Defendant's unlawful

---

[30] *Id.*
[31] *Id.*
[32] *Id.* at ¶ 8.
[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] *Id.* at ¶ 8.

11

actions with respect to the use of HIV test results. The Fifth Circuit has held that alleging multiple grounds for an adverse employment action is not fatal to an ADEA claim at the pleading stage. *See Leal v. McHugh*, 731 F.3d 405, 414 (5th Cir. 2013). According to the court in *Leal*:

> As to the multiple alleged bases for the adverse employment actions here, this feature, too, is not fatal to the complaint at this stage of the case. It simply will behoove appellants--if subject to *Gross's* heightened evidentiary burden here--to prove at summary judgment or trial that, but-for their age, they would have been selected. [39]

Accordingly, Plaintiff's disparate treatment claim under the ADEA survives Defendant's Motion to Dismiss.

2. <u>Harassment and Hostile Workplace Claim</u>.

To state a claim for age-based harassment, Plaintiff must allege: (1) that she is over the age of forty (40); (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based on her age; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) defendant knew or should have known of the harassment and failed to take prompt remedial action.[40] In order to state a hostile work environment claim, the complained-of-conduct must be "so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the work place." *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 326 (5th Cir. 2004). Here, as outlined previously, Plaintiff alleges a regular pattern of age-based comments directed to her and other co-workers above 65 years of age. These comments occurred at least bi-weekly, and thus were not "isolated" instances of age-based conduct. *See, Paulissen v. MEI Technologies, Inc.*, 942 F. Supp. 2d 658, 676 (S.D.

---

[39] *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009).
[40] *Harris v. Forklift Systems*, 114 S. Ct. 367, 370-71 (1992).

Tex. 2013) (holding that the plaintiff failed to state a hostile work environment claim under the ADEA because the age-based comment alleged in the complaint were "isolated incidents that were neither sufficiently severe nor sufficiently pervasive as to constitute a hostile environment"). Plaintiff's allegations with respect to harassment and a hostile work environment based on her allegations of a pattern of age-based comments and conduct is sufficient to survive a Motion to Dismiss. Accordingly, Defendant's Motion to Dismiss is DENIED with respect to Plaintiff's harassment claim under the ADEA.

3. Retaliation Claim.

To state a claim for retaliation in violation of Title VII, Plaintiff must allege that (1) she participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action." *McCoy v. City of Shreveport,* 492 F.3d 551, 556–57 (5th Cir. 2007) (citations omitted). Here, Plaintiff's allegations also state a claim for retaliation under the ADEA. Plaintiff alleges that she complained about Defendant's age-based conduct and adverse employment actions taken against her, including placement on a supervisory plan and probation, and ultimately dismissal. (Amended Complaint at ¶ 9). Plaintiff further alleges that on July 16, 2018, she timely filed charges of discrimination with the Equal Employment Opportunity Commission (EEOC), and the Louisiana Commission on Human Resources and received a Notice of Right to Sue. (*Id.* at ¶ 10). Plaintiff was terminated on August 7, 2018. The close proximity in time between Plaintiff filing the charges and her termination support a claim of retaliation. The Court concludes that these allegations and the allegations cited in the Court's discussion of Plaintiff's disparate treatment

claim, state a claim for retaliation under ADEA. Defendant's Motion to Dismiss is therefore DENIED with respect to Plaintiff's retaliation claim.

### III.

### CONCLUSION

For the foregoing reasons, the Rule 12(b)(6) Motion to Dismiss [doc. 12] filed by Defendant is **DENIED**.

THUS DONE in Chambers on this 30th day of September, 2019.

_____
ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE